Defendant Director of Revenue and Finance dismissed plaintiff as Hoboken City Attorney after a hearing on charges preferred by defendant and plaintiff brings this action in lieu ofcertiorari to review his dismissal.
The parties agreed at the trial and argument that the case was to be decided on the record below with the addition to that record of the ordinance creating the office of City Attorney and defining the City Attorney's powers and duties.
Rule 3:81-13 gives this Court discretionary power to make independent findings of fact and in this case the interests of justice plainly require that I do so. Plaintiff failed in an earlier action to disqualify defendant to hear the charges on the grounds of bias and prejudice. Rinaldi v. Mongiello,4 N.J. Super. 7 (App. Div. 1949). This was because as a matter of "stern necessity" no hearing could otherwise be held. Plaintiff followed the practice now settled by the Appellate Division's decision in that case of making the objection for bias and prejudice of the defendant at the outset of the proceeding under review. This record discloses sufficient ground for that objection to impel my conclusion to make an independent finding of facts.
Under the former practice the former Supreme Court in reviewing this type of case not only had authority, but seemingly was under direction by statutory mandate, R.S. 2:81-8, to determine disputed questions of fact as well as law, Shibla v. TownshipCommittee of Wall Township, 137 N.J.L. 692 (E. A. 1948); and the doctrine of Devault v. Mayor of Camden, 48 N.J.L. 433
(Sup. Ct. 1886), urged by defendant here, and holding that the former Supreme Court would not review the testimony taken before the lower tribunal where there was a rational basis for the determination under review "nevertheless, must, in view of the legislation referred to (R.S. 2:81-8) be read, so to speak, inpari materia, with the statutory power of review thus clearly conferred." Kohn v. Tilt, 103 N.J.L. 110 (E. A. 1926).
Inasmuch as I am exercising the power conferred by Rule
3:81-13 to make an independent finding of facts I have no *Page 413 
occasion to determine whether under the authority of Winberry v.Salisbury, 5 N.J. Super. 30 (App. Div. 1949), the statute,R.S. 2:81-8, was superseded by Rule 3:81-13, either altogether or only so far as is necessary to permit full scope of the rule.
I find that the record is utterly devoid of substantive testimony supporting defendant's findings of plaintiff's guilt of the charges made. Plaintiff was adjudged guilty on each of three counts, the first for insubordination and misconduct in office, the second for neglect of duty, and the third of an agreement with others to cheat and defraud the City by wrongfully stipulating tax assessment reductions before the Hudson County Board of Taxation and the State Division of Tax Appeals.
The last charge, implying, as it does dishonest conduct for personal gain, is so grave that, if true, it would necessarily warrant criminal prosecution of the plaintiff and certainly proceedings to disbar him. The evidence to support defendant's finding of guilt on this charge was, however, so flimsy and insubstantial that defendant's counsel at the argument abandoned reliance on any but one of the seven specified instances of alleged fraudulent mishandling set up in the charge.
The City Law Department was assigned to the Department of Revenue and Finance after the 1947 election of the incumbent commission. Defendant's designation of plaintiff as City Attorney was unanimously approved by the commission on June 10, 1947. On July 14, 1948, defendant by letter to the city comptroller purported to suspend plaintiff. The first two counts of the charges were served July 29, 1948, and the third on May 24, 1949. The hearings on all three were held in June, 1949, after the coming down of the Appellate Division's opinion.
 I.
The first count charged misconduct in office "in that on July 9, 1948, you connived, contrived and conspired with certain lawyers, the Mayor and Commissioners to strip *Page 414 
me of the law department and jurisdiction over you, as City Attorney, solely for the purpose of re-employing in said law department certain lawyers not needed, to the detriment of taxpayers and creating discord among the Commissioners and governing body, not to the best interest of the city government and in execution thereof, you unlawfully and unwarrantly dictated and caused to be typewritten certain resolutions, wherein the law department was transferred from the Director of Finance to the Mayor's Department of Public Affairs."
At the hearing before defendant no affirmative evidence of any kind was offered to support the charge except that of a stenographer who typed the resolution mentioned, and her testimony became unimportant because plaintiff admitted that he had prepared it and that the stenographer typed it under his instructions. The only witness to throw light on the background of the charge was the plaintiff himself. Defendant's finding was that plaintiff "without any authorization in attempting to transfer the law department to the Department of Public Affairs, has breached his faith as City Attorney and is guilty of insubordination and misconduct in office." I find as a fact that nothing in plaintiff's conduct justifies even the slightest inference that he "connived" or "conspired" with "certain lawyers, the Mayor and Commissioners" "solely for the purpose of re-employing certain lawyers not needed." He did draft a resolution to transfer the law department to the Department of Public Affairs and he did intend to urge its adoption upon the Commission. His reason for doing so dissipates any inference of impropriety or insubordination. He testified that after the 1947 election unseating the long incumbent McFeely administration, the former law department of eight or nine lawyers and several special counsel was abolished and he as City Attorney was required to discharge the city legal business by himself. After a few months he suffered a heart attack and requested defendant and other commissioners to appoint assistants. The other commissioners took a "hands off" attitude because the Law Department had been assigned to defendant and commission action *Page 415 
had to await steps by him to initiate such appointments. Defendant did effect the appointment of one assistant but he was in office only a few months. Plaintiff had to wait several months before a replacement was appointed and was given a second assistant only after he had suffered a second heart attack. Defendant's reluctance to effect the appointment of assistants was not based on the lack of need of them. So far as appears from the record consisting as it does only of plaintiff's testimony, defendant because of civil service laws was not free to effect appointments except from a list of "McFeely lawyers," that is, from among the group whose services had been terminated when the former law department was abolished. Defendant did not want to do that.
Plaintiff concluded that he was not going to get the required aid from defendant and that the City legal business was suffering for lack of adequate personnel and that to bring the matter to a head he would lay before the full commission a resolution to transfer the department to another the head of which might be more sympathetic to his personnel needs. His plan was frustrated when defendant discovered the existence of the proposed resolution and promptly suspended him.
Defendant misconceives this action of plaintiff in these circumstances to be insubordination and misconduct in office. The office of City Attorney imposes heavy responsibilities on its incumbent. Defendant concedes, as he must, that the City Attorney's client is the City and not his department head. The ordinance creating the office requires the City Attorney to "represent the City of Hoboken in all legal matters in which it or members of the governing body in their official capacity shall have an interest or be a party, and shall render such legal services as shall be required by the governing body or any member thereof." Certainly the City Attorney has the duty in discharge of these responsibilities to make known his views of the personnel requirements to handle them. If his department head does not agree, particularly, as here, not on the ground of lack of need but because of unwillingness to appoint from among a group in disfavor with him, it is not only the right but probably the duty of *Page 416 
the City Attorney to appeal to the final repository of responsibility, the City Commission, whose duty it is to assure the proper and efficient discharge of the burdens of a department to which all of them must turn for legal advice. Plaintiff's conduct at most was motivated by "bona fide criticism of and disagreement with the policies and acts of" his superior (Harrison v. State Board of Education, 134 N.J.L. 502, at 504) and not "disobedience and refusal to observe the orders and directions of duly constituted authority." Ibid. Commendable awareness of his responsibilities of office, not insubordination and misconduct, are established by the testimony.
 II.
The second count charges neglect of duty in (a) failing to bring suit on a certain garbage contract, (b) recommending payment of certain claims of questionable validity and (c) "that you unnecessarily held for a considerable time the claim of one Frank P. McCarthy, a counselor at law, in the sum of $25,000 for legal services without making the usual legal study on the validity of said claim and after doing nothing you informed me that you could not do anything with it and left the merits of its payment in a state of uncertainty, forcing me to prepare and look up the law, which might give rise to contesting the validity of the claim. Although it was your legal and moral duty to the City to thoroughly analyze and study in detail the payment of said enormous sum of $25,000, which was presented April 30, 1948, you neglected to give this matter its prompt and required attention and consideration to the detriment of the City of Hoboken."
No evidence whatever was offered before defendant on sub-charges (a) and (b). Again light is gleaned as to the background for the sub-charge (c) primarily from plaintiff's own testimony. The finding on which the conviction on this count is based that plaintiff "did not draw up any memorandum of law asrequested by me" (italics mine) is utterly *Page 417 
without foundation in the proofs. There is no testimony by anyone of a request by defendant for a memorandum of law concerning the validity of the claim. Plaintiff received the claim sometime in May of 1948 and brought it to a commission meeting intending to present it for that body's consideration. Plaintiff says there was a large number of matters on that day's agenda and defendant told him to "bring this up two weeks from now," that no request was made for an opinion at the time, that he brought the claim to the meeting two weeks later, as instructed, and for the first time defendant demanded to know "where is the law that says we don't have to pay this," that plaintiff said he couldn't be expected within five minutes to have a memorandum of law. Defendant thereupon took the papers from him to look up the law himself.
Proofs were offered that a law clerk subsequently supplied defendant with a memorandum listing citations of statutes and cases on the question of the liability of a municipality when an appropriation for the payment of the contract price is not provided for in the budget. This seems to have been prepared in August following plaintiff's purported suspension in July and obviously is not evidential of plaintiff's alleged neglect of duty in May.
Defendant's opinion accompanying his judgment strives to support the conviction by the finding that at the time of the second May meeting there was already in existence in the Law Department a "memorandum addressed to Mayor De Sapio" prepared by "Judge Charles DeFazio, who was assistant city attorney from May to November, 1947," "showing that the claim of McCarthy was excessive, exorbitant and an imposition on the taxpayers." The brief filed on defendant's behalf refers to the document as a "memorandum of law."
The characterization of the document in question as a memorandum of law is plainly fanciful. It is and was intended to be a political pamphlet as its context clearly shows. Its author candidly testified that it was something prepared by him for the Mayor's use and not in his official capacity *Page 418 
as plaintiff's legal assistant or under plaintiff's instruction or with his knowledge. It was prepared nine months before the submission of the McCarthy statement for services and its adversely critical references are not to that statement but to a resolution of the former administration employing McCarthy. Its use by defendant, a member of the bar, to support his finding does him no credit.
 III.
The last charge was served ten months after plaintiff's purported suspension in July, 1948. The gravamen of the charge, as argued, is not that plaintiff carried on municipal legal affairs while under suspension but that he "with divers other person and persons did conspire, combine, confederate and agree together, to cheat and defraud the City of Hoboken, in that while you were suspended and without any authority from the Board of Commissioners, did agree with said divers persons to the reduction of assessments made both for the year 1947 and 1948 with the result that the assessments of the City of Hoboken were greatly reduced and that the City was unlawfully and illegally deprived of tax moneys, which it was justly entitled to and that said assessments were unlawfully reduced and the moneys of which the City was defrauded by your acts amounted to thousands of dollars." Then follows a specification of alleged "overt Acts" comprising seven tax appeals wherein assessments were reduced on stipulations for reductions.
These are grave charges imputing criminal conduct to plaintiff which, as already observed, if true, justify proceedings for plaintiff's indictment for crime and for his disbarment. They do not charge in words that plaintiff profited but the implication of an allegation that he did is plain.
I have noted that at the argument of this cause defendant's counsel abandoned all but one of the alleged overt acts as supporting the defendant's finding incorporated in his judgment that plaintiff "entered into an agreement with divers *Page 419 
person or persons to deprive the City of its tax moneys to which it was lawfully entitled, resulting in a great loss of revenue to the City of Hoboken." I cannot for that reason overlook the testimony as to the abandoned "overt acts" inasmuch as I am making an independent finding of facts and also because the testimony as to them brings into sharp relief the utter failure to support by evidence any of these serious accusations.
No testimony at all was offered as to one of the alleged improper settlements and as to a second the assessor in charge took full responsibility for the settlement made and nothing whatever was adduced to connect plaintiff with it. In three more instances not only did the assessor assume responsibility for the settlements but he frankly testified that in making the assessments in the first instance, he "took a chance" that the taxpayers would not appeal, knowing that if they did the appeals would be sustained because the assessments were in excess of State Division of Tax Appeals determinations which had a binding effect for the years in question. In the instance of the last of the group which defendant now says he doesn't rely on, his effort was to connect plaintiff with the settlement because the assessor had noted on the retained copy of his petition of appeal in his own handwriting "stipulated by Rinaldi." The assessor in this case clearly explained this as meaning merely that the formal document filed with the tax board had been signed for the city by plaintiff but that the assessor had made the settlement agreement. Defendant's reason for abandoning all these cases as supporting his finding is apparent; there is not a shred of proof of wrongdoing by plaintiff in any of them.
The cases which defendant insists support his finding are those involving the 1947 and 1948 personal property tax appeals of Metal Lumber Co. In 1946 and prior years the personal property of that company was assessed at $1,000. For the tax year 1947 it filed a return with the assessor setting up a figure of $45,500 and the assessor promptly imposed an assessment of that amount. The company appealed to the County Tax Board and that Board affirmed the assessment. *Page 420 
The taxpayer then appealed to the State Division of Tax Appeals. Meanwhile the assessing date for 1948 arrived and while the company filed no return for that year the assessor fixed an assessment of $45,500 on the basis of the action taken for the previous year.
Sometime late in 1948 an officer of the taxpayer protested to the Mayor that these were over-assessments; subsequently this officer and another representative conferred with plaintiff, his assistant Gottlieb and the assessor. Following this meeting agreements were signed reducing the assessments to $10,000 for each year.
I am satisfied that the reason for the settlement was that the 1947 return had erroneously included personal property non-taxable by Hoboken. The return itself is not in evidence and from the testimony it appears that it has been lost or mislaid. However, the assessor said of the return: "They had the intangibles in" and plaintiff testified an officer of the corporate taxpayer said property located in Perth Amboy was also included. Since enactment of Public Laws 1945, Chapter 163, p. 576 (R.S. 54:4-1) assessments of personal property "shall not include any intangible personal property whatsoever" and of course to the extent these assessments did include intangibles the taxpayer was entitled to a reduction and that right would not be prejudiced before the State Division of Tax Appeals by the fact of a county board affirmance of the improper assessment. The assessor further testified as to the tangible personalty at the taxpayer's place of business. "Of course the physical property down there, why I did not think that was worth $45,000," the value was "around $10,000 or $15,000."
There is no need to resolve the relatively unimportant conflicts in the testimony as to how the $10,000 settlement was reached. It is abundantly clear that the figure was not plaintiff's alone but had the concurrence of the assessor. The only rational inference from the evidence is that the taxpayer was accorded the treatment to which it was justly entitled. Certainly no inference is permissible or possible that plaintiff was guilty of any wrongdoing. *Page 421 
 IV.
I have not overlooked the argument that there are proofs establishing that plaintiff attempted "to take over the assessors." The testimony establishes the contrary; but in any event this accusation is not included in the charges served on plaintiff.
 V.
I shall enter a final judgment in favor of plaintiff reversing and setting aside defendant's determination of dismissal and directing plaintiff's reinstatement as City Attorney. I shall also direct that the defendant cease continuing in effect his communication of July 14, 1948, addressed to the City Comptroller and any other actions taken by him to effect the withholding from plaintiff of salary due and owing plaintiff.