144 N.J. Super. 313 (1976)
365 A.2d 479
JOHN NERO, THOMAS GIANGIULIO AND ANTHONY LO PRESTI, PLAINTIFFS-APPELLANTS,
v.
BOARD OF CHOSEN FREEHOLDERS OF CAMDEN COUNTY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 20, 1976.
Decided October 7, 1976.
*315 Before Judges BISCHOFF, MORGAN and COLLESTER.
Mr. Elliott G. Heard, Jr. argued the cause for appellants Nero and Giangiulio.
Mr. Alfred R. Pierce argued the cause for appellant Lo-Presti.
*316 Mr. John A. Yacovelle, Jr., County Counsel, argued the cause for respondent.
The opinion of the court was delivered by BISCHOFF, J.A.D.
Plaintiffs, members of the Camden County Municipal Utilities Authority (CCMUA) filed an amended complaint in which they sought a judgment restraining and enjoining defendant Board of Chosen Freeholders of Camden County (board) from proceeding to conduct hearings on charges that plaintiffs were guilty of inefficiency, neglect of duty and misconduct in office.
Plaintiffs' motion for summary judgment was denied. They filed a notice of motion for leave to appeal from that denial seeking, contemporaneously therewith, a restraint against the conduct of the hearings pending appeal. A temporary restraint was granted. Oral argument was held on the motion and on the merits of the appeal. The parties were given leave to file supplemental briefs.
We now grant leave to appeal and, since the issue presented involves a matter of public importance, requiring prompt resolution, we elect to consider the merits of the appeal and decide it at this time. R. 2:11-2.
Defendant board, by resolution and pursuant to the authority conferred by statute (N.J.S.A. 40:14B-4), created the CCMUA, and the three plaintiffs were appointed members of the Authority. The board, by resolution adopted March 16, 1976, declared itself "a committee of the whole for the purpose of investigating the management, efficiency, neglect of duty or misconduct in office, individually and collectively, of the Commissioners of the Camden County Municipal Utilities Authority, pursuant to R.S. 40:20-82 [sic], to determine whether or not one or more of the aforesaid Commissioners should be charged with inefficiency, neglect of duty or misconduct in office and afforded a hearing thereon pursuant to R.S. 40:14B-16." Following a series of meetings the board adopted three separate resolutions on July 8, 1976, each containing the following recital:

*317 * * * * * * * *
WHEREAS, pursuant to said resolution the Board heard testimony, received exhibits, received a legal opinion, and has considered all of the aforesaid; and
WHEREAS, it appears that there is probable cause to believe that certain Commissioners have been guilty of inefficiency, neglect of duty or misconduct in office and are consequently subject to removal from office under the provisions of R.S. 40:14B-16. * * *
The three resolutions then adopted charged all three plaintiffs individually with inefficiency, neglect of duty and misconduct in office, as was more specifically set forth in charges annexed to each resolution and incorporated therein.
Hearings on the charges were scheduled to commence before the board on September 20, 1976, and have been stayed until the further order of this court.
The amended complaint filed by plaintiffs initially attacks the proceedings of the board that preceded adoption of the three resolutions preferring charges against them on the following grounds:
(1) Plaintiffs were subpoenaed to appear before the board (acting as a committee of the whole), compelled to testify and denied the right to cross-examine witnesses;
(2) the board adopted the resolutions preferring charges against plaintiffs without first making findings of fact and conclusions of law of its own but, rather, improperly relied upon a legal opinion prepared and submitted by counsel, which constituted an illegal delegation of authority; and
(3) Not all board members were present at all the hearings and those not in attendance at all the meetings could not properly vote to prefer the charges against plaintiffs.
We find these contentions to be without merit. Counsel does not point to any statutory requirement for the appointment of a committee to investigate charges, to prepare a report or to make findings of fact and conclusions of law. Nor are we aware of any condition precedent to the preferring of charges against a member of the CCMUA by the board pursuant to N.J.S.A. 40:14B-16.
*318 Plaintiffs further charge, in the amended complaint and in a proffer of proof made in open court on the return day of the motion for summary judgment, that:
(1) Voluminous newspaper reports, accounts and editorials published within the county have (a) caused a public clamor demanding removal of the plaintiffs as members of the CCMUA; (b) caused various municipalities in the County of Camden to adopt resolutions condemning plaintiffs and calling upon the Board to officially remove them from office; (c) demanded that the board remove plaintiffs from office without affording them an opportunity to be heard, and (d) since the board members are elected officials and look to the newspapers for support, plaintiffs could not receive a fair and impartial trial and, if forced to participate in a hearing before the board, they would suffer irreparable harm and be deprived of a fair and impartial hearing;
(2) The seven freeholder members of the board are Democrats who actively support the mayor of the City of Camden who, at the time of the adoption of the resolutions on July 8, 1976, was the Democratic political leader; that the mayor was directly and indirectly in communication with individual members of the board and improperly influenced, or improperly attempted to influence, the actions of the board with respect to plaintiffs; and
(3) The Attorney General of the State of New Jersey, who is the chief law enforcement officer for the State and whose responsibility could include the institution of actions against the members of the board for failure to perform their duty, has publicly and privately called upon the board to remove plaintiffs from office and his actions in so doing constitute threats to the board which interfere with the rights of the plaintiffs.
All of the foregoing, it is alleged, make it unlikely that plaintiff will receive a fair and impartial hearing before the Board.
*319 At the argument on the motion for summary judgment, and before us, defendant asserted  for purposes of the motion only  that the witnesses produced by plaintiffs at the time of the motion might testify as plaintiffs stated they would, but argued that, even if they did, such testimony as a matter of law would be insufficient to impede the removal process established by statute. N.J.S.A. 40:14B-16. Further, that plaintiffs' allegations concerned actions taken by third persons not under the control of the board, without any proof that such action resulted in creating any prejudice or bias on the part of the Board.
The trial judge refused to take proofs "in view of the assertion by the defendant Board through counsel for the purpose of [the] motion the allegations would be accepted as true, that is, with respect to those matters [for] which an offer of proof [was] made."
The judge concluded that
(1) He had no jurisdiction to subvert the provisions of the statute, which provided that a member of a municipal authority could only be removed by the governing body by which he had been appointed;
(2) The newspaper publicity, while sensational, "cannot be said at this time [to] constitute such a prejudicial background and environment [so] as to lead the Court to determine that this Board, to whom the responsibilities have been delegated, cannot make a decision in accordance with the facts."
(3) Testimony concerning outside influences upon board members are "possibly germane when the hearing does take place" but cannot be utilized to preclude a hearing; and
(4) There is no basis in law for the court to assume jurisdiction where, as here, the statute vests the exclusive power of removal in the appointing body and where the constitutional rights of plaintiffs to due process are adequately protected by a right of review in the courts.
Some cases have enunciated the general rule that a statutory agency may conduct a hearing even though biased or *320 prejudiced when no hearing can otherwise be held. "This rule is said to be one of stern necessity." Rinaldi v. Mongiello, 4 N.J. Super. 7, 12 (App. Div. 1949); Zober v. Turner, 106 N.J.L. 86, 88 (E. & A. 1930); Duffield v. Memorial Hospital Ass'n of Charleston, 361 F. Supp. 398 (D.C.S.D.W. Va. 1973); 2 Davis, Administrative Law Treatise, §§ 12.04 and 12.06 (1970).
The constitutional right of due process which guarantees all persons the right to a fair and impartial hearing is said to be protected under those circumstances by placing the objections on the record prior to proceeding with the hearing, thus preserving the issue for appellate review and affording an expanded scope of review on appeal. Rinaldi v. Mongiello, supra; Rinaldi v. Mongiello, 7 N.J. Super. 410 (Law Div. 1949), aff'd o.b 6 N.J. Super. 387 (App. Div. 1950); Davis, Administrative Law Treatise, § 12.06 (Supp. 1970). However, our courts have not required that all administrative or statutory remedies be exhausted before the courts will assume jurisdiction over a controversy where the tribunal or the agent designated to conduct the hearing in the first instance is biased or prejudiced or the interest of essential justice requires the intervention of the courts. Baldwin Construction Co. v. Essex Cty. Bd. of Taxation, 16 N.J. 329 (1954); cf. Pleasantville Taxpayers v. Pleasantville, 115 N.J. Super. 85, 88 (App. Div. 1971).
Departure from the statutory procedure is proper where the interests of justice require it. Matawan v. Monmouth Cty. Tax Bd., 51 N.J. 291, 296 (1968); Newark v. Essex Cty. Bd. of Taxation, 110 N.J. Super. 93, 105 (Law Div. 1970).
The factors to be taken into consideration in determining whether to bypass the administrative remedies created by the Legislature were stated by the Supreme Court in Roadway Express v. Kingsley, 37 N.J. 136 (1962), in the following terms:
*321 However, we are not particularly concerned with the label or description placed on the issue but are concerned with underlying considerations such as the relative delay and expense, the necessity for taking evidence and making factual determinations thereon, the nature of the agency and the extent of judgment, discretion and expertise involved, and such other pertinent factors as may fairly serve to aid in determining whether, on balance, the interests of justice dictate the extraordinary course of by-passing the administrative remedies made available by the Legislature. [at 141; citation omitted]
Broadening concepts of due process in recent years have focused on the constitutional right of one charged with an offense to an impartial hearing. The United States Supreme Court considered this issue in two recent cases. In Withrow v. Larkin, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975), a Wisconsin statute prohibited various acts of professional misconduct of physicians and empowered a State Examining Board to warn and reprimand physicians, to temporarily suspend licenses and institute criminal action or actions to revoke licenses. When the board notified the appellee-physician that an investigative hearing would be held, at which the appellee and his attorney could attend, and that the hearing was to be held for the purpose of determining whether the appellee had engaged in certain prohibited activities, the appellee brought an action against the board seeking injunctive relief and a temporary restraint against the hearing on the grounds that the hearing would violate his constitutional due process rights. The court held that there was an absence of proof that the combination of the investigative and adjudicative functions in one board constituted an unconstitutional risk of bias and said that "The mere exposure to evidence presented in nonadversary investigative procedures is insufficient in itself to impugn the fairness of the Board members at a later adversary hearing." 421 U.S. at 55, 95 S.Ct. at 1469. However, had there been sufficient evidence to establish that the board was prejudiced, relief undoubtedly would have been afforded. The court stated the guiding principles in this context as follows:
*322 Concededly, a "fair trial in a fair tribunal is a basic requirement of due process." This applies to administrative agencies which adjudicate as well as to courts. Not only is a biased decisionmaker constitutionally unacceptable but "our system of law has always endeavored to prevent even the probability of unfairness." In pursuit of this end, various situations have been identified in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable. Among these cases are those in which the adjudicator has a pecuniary interest in the outcome and in which he has been the target of personal abuse or criticism from the party before him. [at 46-47, 95 S.Ct. at 1464; citations omitted]
In Hortonville Dist. v. Hortonville Ed. Ass'n, ___ U.S. ___, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976), teachers on strike who had been discharged by the board of education were offered a hearing before the same Board on reemployment opportunities. The teachers contended they would be unable to obtain a fair hearing from the board. The court held that the only evidence to support the teachers' claim that the board was biased was the fact that the board had been involved in negotiations with the teachers preceding their discharge, and that this single fact, standing alone, was not sufficient to justify disqualification of the Board from conducting the hearing. However, the court did indicate that due process principles may at times disqualify a board from exercising a statutory grant of power to hold a hearing. The court said:
The Fourteenth Amendment permits a court to strip the Board of the otherwise unremarkable power the Wisconsin Legislature has given it only if the Board's prior involvement in negotiating with the teachers means that it cannot act consistent with due process.
Due process, as this Court has repeatedly held, is a term that "negates any concept of inflexible procedures universally applicable to every imaginable situation." Determining what process is due in a given setting requires the Court to take into account the individual's stake in the decision at issue as well as the State's interest in a particular procedure for making it. [___ U.S. at ___, 96 S.Ct. at 2315, 49 L.Ed.2d at 10; citations omitted]
While in both the foregoing cases the court held that the hearing could proceed before the designated tribunal, such *323 conclusion was firmly anchored in the finding that the record was barren of any proof of existing bias, prejudice or partiality. Implicit in the language of the court is the holding that if there is proof of bias or partiality on the part of the hearing tribunal, a hearing before it would violate constitutional guarantees of due process.
In Ferrari v. Melleby, 134 N.J. Super. 583 (App. Div. 1975), Ferrari had departmental charges preferred against him and he was to have a hearing before Chief of Police Melleby. Ferrari sought (1) an injunction in the Chancery Division against the department proceeding with the hearing, contending Melleby was biased and partial, and (2) an order directing the appointment of a hearer other than Melleby. The trial court granted summary judgment in favor of respondents, holding that Ferrari must first exhaust his administrative remedies before seeking relief in the courts. The Appellate Division reversed, saying:
It is our view that courts should be available to litigants to grant meaningful relief before a departmental hearing is held if the facts and circumstances warrant it. See Kelly v. Sterr, 62 N.J. 105, 110 (1973) where the court commented upon the departmental hearing there held that "Certainly defendant was entitled to be tried before a fair and impartial tribunal."
This right to a fair and impartial hearing transcends appellant's individual rights. The general public must be assured that nobody charged with wrongdoing, even though not criminal in nature, be deprived of his constitutional right to a fair and impartial hearing. Appellate courts in particular are given the supervisory responsibility, which must never be lightly cast aside, to safeguard those fundamental rights and maintain the public's respect.
It is crystal clear, as established by custom and our case law, that the general rule is that a superior officer may reprimand subordinates, may prefer departmental charges against them and not be disqualified per se to try such charges when duly designated to do so. We go further and hold that courts should be extremely cautious in interfering with that administrative procedure and, in fact, rarely anticipate the necessity of doing so.
However, in the instant case, we have determined that justice and administrative due process mandate the granting of relief before the hearing is held so as to avoid the needless expenditure of everyone's time and expense in holding the hearing and, if found guilty, an *324 appeal to the Civil Service Commission and, thereafter, an appeal to the courts. [at 586-587; citations omitted; emphasis in original]
The same reasoning is fully applicable here. The record presented to us discloses one of those rare instances where justice requires us to interfere with the administrative process established by statute.
We have here more than a naked charge of prejudice, partiality and bias of the board designated to hear the charges. Plaintiffs here contend that improper influences of several types were brought to bear on the board and offered to prove that these improper attempts were made and had their designed and intended effect, thus rendering the board incapable of affording plaintiffs a fair hearing.
The charges preferred against plaintiffs present issues of public importance. The hearing is likely to be lengthy. The final resolution of the charges should not be unduly delayed by an abortive hearing should the tribunal, as constituted, be found at a later time to lack the impartiality necessary to render a binding decision.
While we do not lightly interfere with normal statutory and administrative procedure, we conclude that on the record before us plaintiffs should be afforded a preliminary hearing where a determination can be made as to whether the board, or a quorum thereof, can properly hear and determine the charges.
The order denying plaintiffs' motion for summary judgment is vacated and the matter remanded for a plenary hearing on the allegations concerning the bias, prejudice or partiality of the board. Should the trial judge find at least a quorum of the board qualified to hear and determine the charges against plaintiffs, those so qualified should be advised to proceed.
On the other hand, should the trial judge find that a quorum does not exist which is qualified to hear the issues, it would be appropriate for the trial judge to consider reference to a master for hearing of the charges, pursuant to R. 4:41-1 et seq., with the direction to the master to make *325 findings of fact and conclusions of law and file his report directly with the trial court.
The public interest involved requires that the foregoing procedures be conducted with all possible dispatch.
Reversed and remanded for proceedings consistent herewith.
We do not retain jurisdiction.