161 N.J. Super. 564 (1978)
392 A.2d 163
IN THE MATTER OF THE PRIVATE PASSENGER AND UTILITY AUTOMOBILE RATES OF ALLSTATE INSURANCE COMPANY.
Superior Court of New Jersey, Appellate Division.
Argued May 22, 1978.
Decided June 27, 1978.
*565 Before Judges ALLCORN, HORN and FURMAN.
Mr. David M. Satz, Jr. argued the cause for appellant Allstate Insurance Company (Messrs. Saiber, Schlesinger, Satz & Goldstein, attorneys; Mr. Bruce I. Goldstein on the brief).
Mr. Wesley S. Caldwell, III, Deputy Attorney General, argued the cause for respondent Commissioner of Insurance (Mr. John J. Degnan, Attorney General, attorney; Mr. William F. Hyland, former Attorney General; Mr. Stephen Skillman, Assistant Attorney General, of Counsel).
Mr. Jasper J. Jackson, Assistant Deputy Public Advocate, argued the cause for the Public Advocate (Mr. Stanley C. Van Ness, Public Advocate attorney).
The opinion of the court was delivered by HORN, J.A.D.
Pursuant to R. 2:2-4 and R. 2:5-6, on May 15, 1978 Allstate Insurance Company (Allstate) moved for leave to appeal certain interlocutory orders of the Commissioner of Insurance of this State (Commissioner) entered on April 26, 1978 and contained in a paper entitled "Order for Expansion of Proceedings," and for a stay of a hearing scheduled to commence before a hearing officer appointed by the Commissioner on May 17, 1978.
After oral argument on May 22, 1978 we granted leave to appeal, continued a stay of the hearing earlier ordered by a single judge on an emergency basis (R. 2:9-8) and, with *566 the consent of all concerned, elected to consider and determine the appeal on the merits on the oral arguments and the papers submitted.
The primary issue is whether the Commissioner should be disqualified from determining whether the Department of Insurance (Department) on October 25, 1977 legally approved Allstate's rate-increase application. A secondary issue is whether Allstate is entitled to discovery in connection with the primary issue, principally by way of depositions of employees of the Department who have relevant knowledge of pertinent facts.
There is no dispute that the Commissioner has been vested with the authority for administering and enforcing the insurance laws of this State, N.J.S.A. 17:1C-6, N.J.S.A. 17:1C-17, N.J.S.A. 17:17-1 to 17:51-5, N.J.S.A. 17B:17-1 to 17B:36-4, including the administration of the insurance-rating laws, N.J.S.A. 17:29A-1 et seq. Before an insurer, either independently or as a member of a rating organization, may use or charge an insurance rate, its rating system must be filed and approved by the Commissioner, N.J.S.A. 17:29A-6, 7 and 8. And any subsequent alterations or modifications to rating systems must likewise be filed with and approved in advance by the Commissioner. N.J.S.A. 17:29A-14. The standard for rate approval which must be determined by the Commissioner is whether the rates are reasonable, adequate and not unfairly discriminatory. N.J.S.A. 17:29A-7, 10, 11 and 14. Although the stated standard is expressed in comparatively simple terms, the standard requires that the Commissioner consider various factors, including loss and expense experience as well as reasonable profit. N.J.S.A. 17:29A-11. Insurance companies authorized to do business in the State are required to file statistical data concerning loss and expense experience on a regular basis, in order to assure that rates are based on accurate information, and particular applications for rate-system modifications must be supported by such information. N.J.S.A. 17:29A-5 and 11.
*567 The Commissioner is empowered to designate a salaried employee of the Department to act in his stead, "who shall report to the commissioner and advise the commissioner on the nature of the matter delegated." N.J.S.A. 17:29A-26. Based on such advice and report as he may receive from such designee, the Commissioner shall make such order as the Commissioner shall, in his discretion, determine. Id.
On December 28, 1976 Allstate filed an application with the Commissioner seeking increases in its private-passenger automobile-insurance rates in an average overall amount of 14.6%. Numerous hearings were held on the rate application during the early part of 1977, and on June 3, 1977 Philipp K. Stern, Chief Actuary of the Department of Insurance and the designated hearing officer for the Allstate application, rendered his report and recommendations. Based upon the evidence presented, Stern recommended an aggregate increase in the Allstate rates of 7.1%.
In a separate application pending before the Department contemporaneously with the Allstate filing, Insurance Services Office (ISO) had sought an increase in the automobile rates used by its members, in an aggregate amount of 35.3%, based upon the loss and expense experience of its over 200 member companies. Effective September 1, 1977, the Commissioner approved an increase in the ISO rates averaging 14.4%[1]
On October 20, 1977, before any determination had been made by the Commissioner with respect to the Allstate filing, a representative of Allstate met with Stern to discuss the possibility of a filing with reference to the increased rates recently approved for ISO. As a result, on October 24, 1977 an application was hand-delivered to Stern by Allstate representatives, wherein the company proposed to "revise [its] rate levels to those recently approved for Insurance Services *568 Office," which, upon approval by the Department, would replace in its entirety Allstate's pending application. The proposed substitute filing included numerous detailed exhibits indicating the specific breakdown of requested rate changes, which would provide an aggregate overall increase of 16.1% in the Allstate rates. The following day, October 25, 1977, Allstate's representatives were given a letter by Stern stating that the Commissioner had approved the substituted filing, effective November 1, 1977 for new policies and November 21, 1977 for renewal policies.
It should be noted in connection with the filing by Allstate that in the past a procedure had been recognized by the Commissioner whereby insurers were able to file so-called "Me Too" rate applications. A memorandum sent to the Commissioner on December 2, 1975 by Stern and approved by the Commissioner explains this procedure:
RE: Private Passenger Rate Filings  "ME TOO"
Following are revision of rules or rates approved for ISO, we received numerous filings of so-called independent companies, filing by reference the same material that was approved for ISO. I propose that the following past practice be continued in connection with the ISO Private Passenger Rate Revision if and when it becomes final. For companies that file their experience with ISO, even though they have not authorized ISO to file rates on their behalf, I propose to accept filings of ISO rates by reference, without any need for further justification. This procedure recognizes the fact that there would be no question whatsoever that they could use ISO rates without the Commissioner's approval if they simply file the authorization form.
* * * On the so-called "ME TOO" filings, we have a standard form which describes the filing referred to.
If you approve the above procedure, the standard form, a copy of which is attached, would be used without any further need to obtain your approval in specific cases.
On October 31, 1977 the Commissioner issued Rating Order #1-77 requiring Allstate to appear and show cause "why use of the * * * ISO rating would not result in unreasonably high or unfairly discriminating rates." A hearing officer other than Chief Actuary Stern  Naomi La Bastille, *569 Special Assistant to the Commissioner  was appointed to hear the matter. A hearing before her on January 19, 1978 pursuant to the order was attended by attorneys for Allstate; an Assistant Public Advocate and a member of his staff, and a representative of the Insurance Department. Following objection noted by the attorney for Allstate, Ms. La Bastille stated: "The Department takes the position that the Commissioner * * * has the authority to look at a rate, in effect, and assess whether it is excessive or adequate * * *." She expressly stated that she took no position as to whether or not an "approval [by the Commissioner of the filing of October 24, 1977] took place." She assumed "for my purposes" that Allstate was not illegally charging the rate and that it could legally rely on the October 25, 1977 letter given Allstate by Stern. It is unnecessary to discuss further the hearing proceedings, except to say that a number of exhibits were indentified, a few were introduced in evidence and one witness, an actuary employed by Allstate, was questioned by Ms. La Bastille. The tenor of the hearing, however, was that of an inquiry into the rates effective after November 1, 1977 in relation to the earlier application of Allstate which resulted in the 7.1%-increase recommendation by Stern. But the expressions of Ms. La Bastille left no doubt that the actions of Stern as well as Allstate surrounding the October 24, 1977 "Me Too" filing were regarded by her with suspicion. Thus:
Now, as I understand it, time between the request to move to the ISO level of rates and the letter sent by Mr. Stern, was, for our purposes, quite a short period.
At the conclusion of the hearing Ms. La Bastille merely announced that it would be adjourned for the day, since it was by no means concluded.
On February 24, 1978, without any advance notice of her intentions, Ms. La Bastille filed a partial report, indicating that there were serious questions concerning the validity of the new Allstate rates, inasmuch as "the rating systems of *570 Allstate and ISO are vastly different." The partial report concluded by requesting:
* * * directions from the Commissioner with respect to the issues raised, particularly as to whether or not he intended to approve or did approve the present actual Allstate rates, since the resolution of these issues could result in a determination which would render further hearings in this matter moot.
Next, on April 20, 1978, in a "Partial Determination," the Commissioner raised questions, including one "of whether or not rates presently in use by Allstate were legally approved and whether or not Allstate is using rates approved by me." He also issued an order (Rating Order # 1-78) directing Allstate to present evidence at a departmental hearing "that their rates presently in use * * * were approved by the Commissioner in accordance with law."
At the same time he issued a document entitled "Statement of the Commissioner" in which he expressed his version of the facts "concerning the procedures whereby the present Allstate rates went into effect * * *." Included in the Statement is a declaration of his concept of the "Me Too" filing procedures in existence on October 25, 1977; contents of memoranda between him and Stern as to the filings, from what source and when he first learned of the Allstate rate-increase approval of October 25, 1977 and what he thought when he learned of it; the action that he immediately took by way of having Allstate "deviate downward" its rate as approved on said date; his mental reactions, expressions of what he wanted to do and what advice he received as to how to proceed, and what he believed and how he was "shocked" when he discovered "for the first time" the radical difference between the approved ISO rates and those being charged as Allstate rates.
The Statement concluded with the following:
7. Even if, arguendo, the October 24, 1977 Allstate filing had been properly processed as a "ME TOO" rate filing under procedures approved by me, Allstate would still be using rates not approved by *571 me because the company is not in fact using ISO rates. Further, the Allstate filing of October 24, 1977 could not have been properly approved under the "ME TOO" filing procedure because it did not fulfill the conditions upon which that procedure becomes operable. Allstate does not file its experience with ISO and it has a sufficient volume of business to support its own rate filing. Since Allstate did not want ISO rates, its filing was clearly not a "ME TOO" filing, and my specific approval of the rates was required. Not only did I not give my approval, but the filing or a summary of it was not even submitted to me for review at any time prior to the time when it was allegedly approved by me. I never approved the Allstate filing and I never delegated the authority to approve such a filing to any member of my staff.
We now come to the controversial orders contained in the April 26, 1978 "Order for Expansion of Proceedings" (Rating Order #1-77). After reciting "I find that serious issues have been raised with respect to whether the increased rates effected by Allstate pursuant to its filing of October 24, 1977 have been charged and implemented in accordance with applicable law and established procedures of this Department," he directed that that order supersede the "Partial Determination herein dated April 20, 1978." He ordered Allstate:
* * * to appear and show cause (1) why its present rates should not be suspended as a result of their not having been charged and implemented in accordance with applicable law and established departmental procedures; (2) why its application for an increase dated December 28, 1976 should not be reinstated for consideration and determination even though it had been withdrawn and replaced by the October 24, 1977 filing; and (3) why Allstate should not be required to refund the increases gained in the October 24, 1977 filing in the event the Commissioner determined that the new rates had not been legally approved.
Because of the nature of this proceeding and the extraordinary relief sought, we have related the facts leading to Allstate's application before us in more detail than might otherwise be necessary. Preliminary to any discussion, we emphasize that we are not called upon to determine the merits of the controversy between Allstate and the Commissioner *572 at this time. We do not express any opinion with respect thereto, nor as to whether Allstate's rates are excessive or conform to the "Me Too" filing or otherwise.
Allstate's request for relief challenges the Commissioner's order of April 26, 1978 only to the extent that the Commissioner would pass upon the issue of whether the Department of Insurance complied with the law and departmental procedures in approving Allstate's October 24, 1977 rate application. Parenthetically, we observe that Allstate does not dispute the Commissioner's statutory powers to approve or disapprove rating systems or any of his other powers to which we have already alluded.
The issue projected is stated by us in another way: is the Commissioner's position as to the validity of the October 24, 1977 filing such that he should be disqualified as a matter of plain justice? We deem that it is and, accordingly, we grant a measure of relief, as hereinafter specified.
It is clear from our recital of the events, orders and other actions of the Commissioner that he has already expressed his views in no uncertain terms that the October 24, 1977 filing was not in accordance with law or the departmental procedures. Notwithstanding such views, he directed Allstate to present evidence to establish what is tantamount to proof that his views were erroneous. Memoranda which passed between the Commissioner and Stern since October 25, 1977, as shown in the record, demonstrate clearly that there exist differences between him and Stern as to what had been established as departmental practice or procedure as to "Me Too" filings.[2] It also appears that the Commissioner may be required to testify in the proceeding.
*573 We find from the record that the state of mind of the Commissioner appears to go beyond a mere preconception of an appropriate resolution. Cf. Kramer v. Sea Girt Bd. of Adj., 45 N.J. 268, 281 (1965). We consider that the Commissioner is so intimately concerned that he ought not to sit in judgment of the projected issue.[3]Van Sweringen v. Van Sweringen, 22 N.J. 440, 448 (1956). As stated in In re Murchison, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955), quoted in Van Sweringen:
A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome. That interest cannot be defined with precision. Circumstances and relationships must be considered. [at 136, 75 S.Ct. at 625]
See also, Nero v. Camden Cty. Bd. of Chosen Freeholders, 144 N.J. Super. 313 (App. Div. 1976); Ferrari v. Melleby, 134 N.J. Super. 583 (App. Div. 1975).
We do not regard the granting of relief to have the effect of depriving the Commissioner of any authority delegated to him by law. His authority does not extend to *574 deciding issues of fact or credibility as between him and Stern, a member of his department, the resolution of which necessarily affects the rights of Allstate. In such a case he no longer acts as the Commissioner: he acts as an adjudicatory tribunal. Although within the sphere of his statutory duties and responsibilities the Commissioner may be required to exercise quasi-judicial functions, the issue thus projected is not within the ambit of his inherent or expressly or impliedly delegated power. Cf. Springsteel v. West Orange, 149 N.J. Super. 107, 111 (App. Div. 1977), certif. den. 75 N.J. 10 (1977).
We regard this appeal as being in the nature of an action in lieu of prerogative writs, being brought here by appeal under our present practice. McKenna v. N.J. Highway Authority, 19 N.J. 270, 277-278 (1955); Shop-Rite of Hunterdon Cty. v. Raritan Tp. Comm., 131 N.J. Super. 428, 434 (App. Div. 1974), certif. den. 67 N.J. 94 (1975).
We note only in passing that although the Public Advocate opposes the granting of the relief sought by Allstate, he expressly withdrew his objection to the approval of Allstate's filing of October 24, 1977.
In view of the foregoing, we direct the following:
The Commissioner is restrained from conducting a hearing on the issue of whether the rate increase allegedly approved by the Commissioner on October 25, 1977 was approved pursuant to authority delegated by the Commissioner or under any departmental procedure established by the Commissioner or approved by him.
The parties shall be afforded reasonable discovery related to the issue mentioned in the next preceding paragraph.
Pursuant to R. 2:5-5(b) so much of the record before us as shall be necessary shall be transmitted to a judge sitting in Mercer County who shall be designated by the assignment judge, who is especially designated by us for the purposes of (a) conducting a pre-hearing conference and entering an appropriate order or orders pertaining to discovery and such other matters as will expedite and facilitate said hearing; (b) *575 conducting an evidential hearing as to said issue; (c) making findings of fact with respect thereto which shall supplement the record before us, and (d) filing same with this court on or before October 1, 1978.
We retain jurisdiction only with respect to the foregoing.
We desire to make it clear that the Commissioner may in the meantime conduct such other hearings and take such other action under said order of April 26, 1978 as is within his jurisdiction, including inquiring into whether Allstate's present rates are consistent with the filing of October 24, 1977, so long as same do not conflict with the above-stated restraint.
NOTES
[1] ISO is a major insurance-rating organization in New Jersey that files uniform rates on behalf of approximately 230 member and subscriber insurance companies.
[2] Example: Memo from Commissioner to Stern, October 26, 1977, which in part reads:

The varied memoranda concerning "ME TOO" filings have clearly stated the policy of this Department. In fact, the policy was established by you. Your recent approvals have included the phrase "This amended filing has the Commissioner's approval." That phrase is a newly adopted one which indicates that I have personally reviewed and approved those filings in some manner which is contrary to our adopted procedure. The fact is that I have not only not reviewed them, but in the case of Allstate, I was not even aware that they wished to exercise their rights to adopt the ISO rates.
In view of the fact that there is now added significance to the routine approval as suggested by you, I will handle all "ME TOO" filings through this office thereby relieving you of the problem of dealing with those routine matters.
* * * * * * * *
[3] We add that he would also be obliged to find facts which the appellate court would review to determine whether they could reasonably have been reached on sufficient credible evidence in the record. See Mayflower Securities v. Bureau of Securities, 64 N.J. 85, 92-93 (1973); Insurance Co. of No. Amer. v. Howell, 80 N.J. Super. 236, 254 (App. Div. 1963).