179 N.J. Super. 581 (1981)
432 A.2d 1366
IN RE ALLSTATE INSURANCE COMPANY.
Superior Court of New Jersey, Appellate Division.
Argued September 15, 1980.
Findings of Fact December 26, 1980.
Reargued April 6, 1981.
Decided July 13, 1981.
*583 Before Judges SEIDMAN, LANE and MORTON I. GREENBERG.
Bruce I. Goldstein argued the cause for appellant Allstate Insurance Company (Saiber, Schlesinger, Satz & Goldstein, attorneys).
Peter D. Pizzuto, Deputy Attorney General, argued the cause for respondent Commissioner of Insurance (James R. Zazzali, Attorney General of New Jersey, attorney; Peter D. Pizzuto, of counsel; John J. Degnan, former Attorney General of New Jersey, and John J. Hayden, Deputy Attorney General, on the brief).
*584 David G. Paul, Assistant Deputy Public Advocate, argued the cause for respondent-intervenor Public Advocate (Stanley C. Van Ness, Public Advocate, attorney; Jasper J. Jackson, Deputy Public Advocate, of counsel; Mr. Paul and Steven H. Hobbs, Assistant Deputy Public Advocate, on the brief).
Argued September 15, 1980  Remanded to Office of Administrative Law for Hearing and Findings of Fact.
The opinion of the court was delivered by SEIDMAN, P.J.A.D.
The primary issue raised by this appeal is whether the Commissioner of Insurance may bar an insurer which becomes a subscriber to a rating organization from adopting the rates, schedules and policy forms previously approved for use by such subscribers without the specific approval of the Commissioner. If we conclude that the Commissioner has such authority, we must next determine whether he should be estopped from exercising it in this case.
On March 18, 1980 Allstate Insurance Company advised the Commissioner by letter that as of July 1, 1980 it intended to expand its prior affiliation with the Insurers Services Office (ISO), a licensed rating organization, to include personal automobile liability and physical damage insurance. Allstate specifically declared that beginning on the effective date it would write new and renewal policies using ISO rates, schedules and policy forms then in effect. Conferences were held between representatives of Allstate and the Commissioner, and there was an exchange of correspondence. On June 10, 1980, the Commissioner sent Allstate a telegram stating that "the proposed change in your current rates, rating systems and policy forms to those of ISO or any deviation therefrom are disapproved." He ordered Allstate to continue using its existing rates until he specifically approved its use of ISO rates "pursuant to the applicable sections of N.J.S.A. 17:29A-1 et seq."
Allstate promptly filed this appeal. It contended that the Commissioner had no statutory authority to interfere with its use of ISO rates once it became an ISO subscriber, and that the *585 Commissioner had always agreed with such an interpretation prior to his order of June 10, 1980. Alternatively, Allstate maintained that it had been misled by the Commissioner's prior practices and by his implied approval in this case. The Commissioner did not contest Allstate's right to become an ISO subscriber, but argued that under the applicable statutes all insurers must obtain his prior approval before adopting any rate or rate amendment, and that this requirement applied to the rate increase that would result from Allstate's adoption of the ISO rates. The Commissioner denied any inconsistency in his prior practices and he denied giving any misleading response to Allstate's announcement of its intentions. The Public Advocate intervened in support of the Commissioner's position.
We granted Allstate's request for a stay of the Commissioner's order conditioned upon Allstates' depositing in an interest-bearing trust account the difference between Allstate's prior rates and the higher ISO rates pending the outcome of this appeal. After hearing the arguments of counsel, we determined in an unreported opinion that in view of the nature of the issues presented and the significant public interests involved the record should be supplemented through a hearing before an administrative law judge and accordingly remanded the matter for such purpose to the Office of Administrative Law. We particularly required that findings of fact be made concerning: (1) the past practices of the Commissioner and the Department of Insurance in the case of independent insurers that had joined ISO and thereafter used and applied ISO rates which differed from the rates previously approved for the same insurers, and (2) how the Department treated Allstate's letter of March 18, 1980, and specifically, in what way those actions departed from the Department's past practices. We expressly indicated, however, that our determination to expand the record should not be viewed as indicative of our ultimate determination.
Hearings were held and we thereafter received the requested findings of fact. The litigants were accorded the opportunity to file supplemental briefs, and we have heard the further argument *586 of counsel. For present purposes it is sufficient to note that we have carefully reviewed the record made before the administrative law judge and have concluded that his findings of fact, to which we shall refer later, are supported by substantial credible evidence, and therefore will not be disturbed by us. Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 483-484 (1974). But our acceptance of the facts as found by the administrative law judge is not dispositive of the issues presented.
Initially, we recount briefly basic facts that are essentially undisputed. Allstate transacts more than 20% of the noncommercial passenger automobile insurance in this State. ISO, as an authorized rating organization, submits applications and supporting data to the Commissioner seeking approval of uniform rates and schedules for particular kinds of insurance on behalf of its members or subscriber insurers. While Allstate has been an ISO subscriber with respect to its commercial insurance lines, it had traditionally filed independent rate requests for personal automobile insurance. Its efforts in 1976 and 1977 to obtain rate increases by independent application therefor or by so-called "me too" filings incorporating by reference the same material that had been used by ISO to obtain increased rates for its members are described in In re Allstate Ins. Co., 161 N.J. Super. 564 (App.Div. 1978). However, those applications did not involve Allstate's decision to affiliate with ISO and use its approved rates thereafter. As to such affiliation Allstate's position has been that by becoming an ISO subscriber it is automatically entitled to use the ISO rates and that the Commissioner had no authority to issue the order under review. At the prior argument, in support of its contention, Allstate pointed to prior instances where independent insurers joined ISO and changed its rates without disapproval of the Commissioner. The Attorney General noted that the precise question of whether an independent filer may unilaterally employ rates approved for a rating organization immediately upon its affiliation with such organization has apparently never been presented for determination in any state. He argued, nevertheless, that the statutory *587 scheme for the approval of insurance rates disclosed an explicit requirement for prior approval by the Commissioner in every case involving the establishment or amendment of rates by an insurer or rating organization, and that such requirement extends to instances where the rates of an independent insurer are increased as the result of the insurer's affiliation with a rating organization and use thereafter of its approved rates. The Attorney General's position was shared by the Public Advocate.
Allstate finds support for its position in N.J.S.A. 17:29A-6, which permits a rating organization to make filings on behalf of its member or subscriber insurers. Allstate contends that there is no specific statutory provision limiting the use of the rates to those insurers that are members of subscribers at the time such a rating system is approved. Consequently, the argument is made that once a rate is approved for organizations such as ISO it may be used by an insurer that thereafter joins or subscribes to the organization without the prior approval of the Commissioner. Allstate contends that prior to the instant matter the Commissioner consistently recognized such right by insurers and that the Legislature has implicitly accepted that interpretation. Our remand for an administrative hearing was for the purpose of developing a record on the Commissioner's past practices in this regard.
The focus of our inquiry concerning the Commissioner's authority must in the first instance be the statutory scheme for regulating insurance rates as contained in N.J.S.A. 17:29A-1 et seq., which was adopted substantially in its present form as L. 1944, c. 27. The basic concept of the statute is that insurance rates must be measured by the Commissioner against the statutory standards and must be approved by him before they can be brought into effect. Coro Brokerage, Inc. v. Rickard, 29 N.J. 295, 299 (1959); Insurance Co. of No. Amer. v. Howell, 80 N.J. Super. 236, 252 (App.Div. 1963). The rates may not be unreasonably high or inadequate for the safety and soundness of the insurer, nor may they unfairly discriminate between risks *588 involving essentially the same hazards and expense elements. N.J.S.A. 17:29A-4.
Before using or applying any rate, every insurer must file with the Commissioner a copy of the rating system upon which such rate is based, or by which it is fixed or determined; but such filing may be made on its behalf by a rating organization of which it is a member or subscriber. N.J.S.A. 17:29A-6. The criteria for the making of rates and rate systems are set forth in N.J.S.A. 17:29A-4, and include the adopting of basic classifications, the establishment of reasonable standards pertaining to hazard or peril and the consideration of such matters as past and prospective loss experience and a reasonable profit to the insurer. N.J.S.A. 17:29A-4. If the Commissioner finds that the rating system filed by or on behalf of the insurer provides rates that are unreasonably high or excessive, or are inadequate or that discriminate among like risks, an order is issued to the insurer or rating organization directing appropriate alterations in the system so as to produce acceptable rates. N.J.S.A. 17:29A-7. If the rating system satisfies the statutory standards, it is approved and the rates may be charged until the Commissioner orders a change or modification. Ibid. If the Commissioner fails to approve or disapprove a rating system within 90 days from its filing, the rating system is deemed approved. Ibid.
It is evident that Allstate's position is fundamentally inconsistent with the statutory scheme described above. The Commissioner's approval of rates to be charged by a rating organization's subscribers must necessarily be based on a review of their loss and expense experienced and other data. A determination that the rates thus approved will satisfy the statutory standards with respect to such insurers cannot reasonably be viewed as extending to other insurers simply because they subsequently subscribe to the same organization. In our view, the key provision, found in N.J.S.A. 17:29A-6, is that every insurer, before using or applying any rate, shall file with the Commissioner *589 a copy of the rating system upon which such rate is based or by which it is fixed or determined. The factors entering into the making of a rating system include, among other things, consideration of past and prospective loss experience and a reasonable profit. No doubt, when Allstate, as an independent insurer, sought and obtained approval of the rates it had been charging prior to its expanded affiliation with ISO, it did so on the basis of the rating system which it filed with the Commissioner. But the new rate structure it intended to employ clearly was not based upon the rating system filed in support of the rates Allstate wished to supplant. Allstate would therefore have to rely upon the rating system upon which ISO's rate structure was based. If so, the ISO rating system was plainly not filed on behalf of Allstate. The statutory requirement is that a filing, if not made by the insurer itself, may "be made, on behalf of such insurer, by a rating organization of which such insurer is a member or subscriber" N.J.S.A. 17:29A-6 (emphasis supplied). The ISO filing could not have reflected the factors applicable to Allstate, such as its past and prospective loss experience and reasonable profit. In light of Allstate's very substantial share of the personal automobile insurance market, those factors could have had a significant impact upon the rating system filed by ISO.
The legislative intent concerning the extent of the Commissioner's authority is expressed in N.J.S.A. 17:29A-7. That section provides that if the Commissioner finds that a filed rating system does not meet the statutory standard,
... he shall issue an order to such insurer, or to the rating organization of which such insurer is a member or subscriber, directing that such rating-systems be altered in the manner and to the extent stated in such order, to produce rates that are reasonable and adequate, and not unfairly discriminatory.
The statute specifies that whenever the Commissioner finds that a previously approved rate no longer satisfies the statutory standard, he shall order all insurers using such rates to alter or amend them in the manner he directs. Particularly applicable here is the further provision that the Commissioner's approval of *590 any rates "shall continue in effect until the commissioner shall, by order, direct that such rating-systems be changed or modified...." Ibid. We are satisfied in the circumstances here present that the new rates Allstate intends to charge constitute an attempt to change or modify its previously approved rates without the approval of the Commissioner. There is nothing in the pertinent statutes to indicate that an insurer may bypass the Commissioner's control over its proposed rates merely by subscribing to a rating organization such as ISO.
Allstate maintains, nevertheless, that over the years the Commissioner has recognized such a right by insurers. This argument is supported by the finding of the administrative law judge that prior to this case the Commissioner consistently followed a practice of routinely approving the use of ISO rates by newly affiliated insurers, without subjecting such use of those rates to any further review based upon the experience of the insurers involved. Although the Commissioner contends otherwise, we accept the judge's finding that this practice was not altered even after the Attorney General issued Formal Opinion No. 1-1978, 101 N.J.S.L.J. 2, 253 (March 16, 1978), in which he concluded that the Commissioner had authority to limit the use by others of rates approved for ISO insurers, and suggested that appropriate regulations be adopted. No such regulations were adopted, nor did the Commissioner expressly rely upon the Attorney General's opinion thereafter.
Nonetheless, to the extent that the Commissioner's practice may have reflected an administrative interpretation of the pertinent statutes, we decline to follow that view. An administrative practice which is followed for many years is generally given substantial weight in determining legislative intent. Malone v. Fender, 80 N.J. 129, 137 (1979); Margate Civic Ass'n v. Margate, 132 N.J. Super. 58, 64-65 (App.Div. 1975), certif. den. 68 N.J. 139 (1975). Such an interpretation is not binding on us. Service Armament Co. v. Hyland, 70 N.J. 550, 561-563 (1976); Mayflower Securities v. Bureau of Securities, 64 *591 N.J. 85, 93 (1973). Only a reasonable administrative interpretation merits our deference. Insurance Co. of No. Amer. v. Howell, supra, 80 N.J. Super. at 254. As in Service Armament Co. v. Hyland, supra, the statutory scheme before us manifests a legislative intent to protect members of the public from the danger of improper insurance rates. Such statutes should be given the fullest effect allowed by the statutory language unless an intent to provide an exemption from regulation clearly appears.
In this connection we have considered Allstate's argument that the Legislature expressed such an intent by refusing to adopt Senate Bill 3459. That bill was introduced with the Commissioner's support in October 1977, and in the view expressed by the Commissioner at that time, would have closed the "loophole" that allowed any insurer to gain the benefit of increased rates given to ISO insurers simply by becoming a subscriber. Specifically, the bill would have barred any insurer that had collected more than 1% of all premiums received in New Jersey for a particular kind of insurance during a calendar year from using a rating organization's rates for one year after becoming a member of subscriber, without the consent of the Commissioner. The bill was assigned to a committee, but no further action was taken. We note, however, that since Formal Opinion No. 1-1978 was issued thereafter, the Legislature might have reasonably concluded therefrom the proposed legislation was unnecessary. In such circumstances, no reliable conclusion can be drawn either way from the failure to adopt the proposed amendment.
In view of the central purpose of the statutory scheme as a whole, and the broad authority given to the Commissioner in N.J.S.A. 17:29A-7 in particular, we hold that an insurer that has been using rates approved by the Commissioner on the basis of its filed rating system may not, after becoming a member or subscriber of a rating organization, use the latter's rates unless the Commissioner determines that such action would not be *592 inconsistent with the statutory standards. To that end, the Commissioner correctly issued the disputed order of June 10, 1980.
With this conclusion in mind we turn to Allstate's assertion that the Commissioner should be estopped from exercising his authority in this case. Consideration of this argument requires a brief summary of the context in which Allstate announced its intention on March 18, 1980.
The Commissioner granted rate increases to Allstate and to ISO in December 1979. In discussions with representatives of the insurance industry, including Allstate, and the Public Advocate, the Commissioner indicated at that time that the rate increases which he granted were interim ones, and that he would grant further rate relief by July 1, 1980. The Public Advocate now argues that when Allstate announced its intention to become an ISO subscriber on March 18, 1980, the portion of Allstate's prior request for rate relief which had not been granted in December 1979 was still pending before the Commissioner. The administrative law judge found, however, that no further relief could have been granted without an additional filing for that purpose by Allstate. It is undisputed that no such filing was made. The Commissioner insists that his understanding of Allstate's March 18 letter, and of a similar letter a few days later, was that Allstate would integrate its supporting data with that of the other ISO insurers so that a single rate request could be reviewed and acted upon by July 1, 1980. Allstate contends, however, that its intention to begin charging the ISO rates in effect on July 1, 1980, regardless of any additional action by the Commissioner, was unmistakably clear.
The administrative law judge found, in essence, that there was a misunderstanding. He found that on March 27, 1980, the Commissioner met with Allstate representatives and told them that technical meetings would be necessary to integrate Allstate's data into the ISO data supporting its then pending rate request. He also found that Allstate reasonably interpreted the *593 instruction to mean that while ISO could not receive an increase until the integration of data was completed, in the meantime Allstate's use of the existing ISO rates would be approved in the usual ministerial fashion. The persistence of this misunderstanding is evidenced by the failure of any of the parties to take any action between March 27 and June 10, 1980. Allstate proceeded with its preparations to convert to ISO rates, while the Commissioner and the Public Advocate did nothing other than await the receipt of further data from Allstate. As the administrative law judge pointed out, this state of affairs arose partly from the Commissioner's reliance upon oral communication and his failure to indicate clearly that Allstate's new affiliation with ISO would not be treated as other similar matters had been treated in the past.
It does not follow, however, that these circumstances are necessarily sufficient to give rise to an estoppel. One whose conduct, silence or omission has induced another to action or nonaction may, "be precluded from taking a course of action that would work injustice and wrong to one who with good reason and in good faith has relied upon such conduct." Summer Cottagers' Ass'n of Cape May v. City of Cape May, 19 N.J. 493, 504-504 (1955); Feldman v. Urban Commercial, Inc., 70 N.J. Super. 463, 474-475 (Ch.Div. 1961). Estoppel may be evoked against public bodies only to prevent "manifest wrong and injustice," and where it would not "hinder or prejudice essential government functions." Vogt v. Belmar, 14 N.J. 195, 205 (1954); East Orange v. East Orange Bd. of Water Com'rs, 73 N.J. Super. 440, 464 (Law Div. 1962), aff'd 40 N.J. 334 (1963). Allstate relies particularly on Anske v. Palisades Park, 139 N.J. Super. 342 (App.Div. 1976). There the court found that although an oral notice of a claim under the New Jersey Tort Claims Act was insufficient, the municipality was estopped from asserting that defense because of plaintiff's reliance on the acts of municipal agents and the lack of any prejudice in defending the merits of the claim.
*594 In this case we cannot regard Allstate's reliance as entirely unreasonable. We reject the assertion by the Public Advocate that it is incredible that Allstate could have believed that it would be treated as an ISO member in all respects after July 1, 1980. To the contrary, we accept the finding that Allstate's belief was credible, particularly in light of the long continued prior practices of the commissioner. The harm which arose from this misunderstanding occurred only between March 18, 1980 and June 10, 1980, when the Commissioner ordered Allstate to maintain the status quo. Furthermore, any loss which arose from those circumstances could only have continued until the ISO request which was pending on March 18 was finally acted upon by the commissioner.
Against this detriment we must consider the public interest involved. The fact that Allstate serves 20% of the relevant market does not alone justify disparate treatment, but Allstate's size clearly means that an estoppel in this case would create a far greater prejudice to an essential government function than existed in Vogt v. Borough of Belmar, supra, or in Anske v. Borough of Palisades Park, supra. We perceive no evidence of any intent to have misled Allstate, but only a mistaken view by the Commissioner of his statutory authority, and inaction based on a mistaken understanding of Allstate's intentions. In these circumstances an estoppel would be inappropriate. Boyd v. Dept. of Inst. and Agencies, 126 N.J. Super. 273 (App.Div. 1974), certif. den. 65 N.J. 281 (1974).
The Commissioner's order of June 10, 1980 is affirmed. Since that order only required Allstate to adhere to its prior rates until its use of ISO rates was specifically approved, our decision is without prejudice to Allstate's right to request the Commissioner's consent to charge whatever ISO rates are in effect at the time such permission is granted. However, such permission, like any other rate request approved by the Commissioner, would only operate prospectively. Any retroactive approval of Allstate's use of the higher ISO rates would be inconsistent with the statutory requirement that all rates be approved by the *595 Commissioner before being implemented. From this date on Allstate shall adhere to the rates previously approved for its use until such time as the Commissioner may approve other rates.
Our stay of the order of June 10, 1980 is vacated. All excess premiums placed in a trust account by our order shall be refunded to the affected policyholders within 30 days from the date hereof.
Affirmed.